An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-989

Filed 5 August 2026

Forsyth County, No. 15CR061796-330

STATE OF NORTH CAROLINA

v.

AHMAD JAMIL NICHOLSON, Defendant.

Appeal by Defendant from judgment entered 1 April 2025 by Judge Tonia A. Cutchin in Forsyth County Superior Court. Heard in the Court of Appeals 25 March 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General, Miranda Shanice Holley, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy Dickinson-Schultz, for defendant.*

STADING, Judge.

## I. Background

The underlying facts of Ahmad Jamil Nicholson's ("Defendant") convictions in this matter are well settled through previous appeals in both our Court and the North Carolina Supreme Court. *See generally State v. Nicholson*, 255 N.C. App. 665, 805 S.E.2d 348 (2017); *State v. Nicholson*, 371 N.C. 284, 813 S.E.2d 840 (2018). This

appeal concerns the trial court's activation of Defendant's sentence for the above referenced cases after it found Defendant had absconded from his probation.

The North Carolina Supreme Court affirmed the trial court's judgment and the jury's conviction of Defendant for common law robbery on 12 May 2016. The trial court had sentenced Defendant to ten to twenty-one months of imprisonment, suspended for thirty-six months of supervised probation. Defendant had successfully appealed his conviction with this Court, but the North Carolina Supreme Court reversed that decision. Defendant's sentence was reinstated upon our Supreme Court's decision on 8 June 2018. The special conditions of probation were: "Intensive substance abuse treatment -TASC; Defendant to report to probation within 72 hours of returning from Florida and handling extradition matter; defendant to begin TASC 72 hours after it is set up."

The evidentiary record tends to show Joshua Johnson with the North Carolina Department of Adult Corrections, probation and parole department, had been assigned to Defendant as his probation officer. Officer Johnson was tasked with locating Defendant to "give him the conditions of supervised probation[ ]" in August 2018. Officer Johnson had never met Defendant in person but had received a copy of the judgment dated 28 June 2018 and provided instructions for Defendant to report to his probation officer "within 72 hours of returning from Florida and handling [the] extradition matter[.]" Officer Johnson testified that upon being assigned Defendant's case he was informed that Defendant "had made it back" and extradition from Florida

"had been handled." However, after being assigned to Defendant, Officer Johnson made multiple, unsuccessful attempts to locate him.

Officer Johnson first attempted to locate Defendant at his recorded address on 8 August 2018. Having failed to locate Defendant at the recorded address, Officer Johnson left behind "contact notices." Eventually, the current resident of Defendant's recorded address informed Officer Johnson that "she and her husband had lived at that address and had no idea -- knew nothing of" Defendant. Officer Johnson attempted a phone call to Defendant's recorded number on 28 August 2018 but was unable to reach Defendant.

On 11 September 2018, Officer Johnson attempted to locate Defendant in local hospitals, shelters in the area, and through "[s]tate jail checks." The state jail checks were performed through "the Forsyth County Detention Center inmate list, CJLEADS and VINElink."[1] Each search was unsuccessful. On 21 September 2018 Officer Johnson filed a probation violation report alleging four technical violations and absconding.

Officer Johnson's first personal contact with Defendant was in 2024 at the first

---

[1] "CJLEADS," also known as Criminal Justice Law Enforcement Automated Data Services, is "a database which details a person's history of contacts with law enforcement in the form of a list of criminal charges filed against the individual[.]" *State v. Duncan*, 287 N.C. App. 467, 468 n.1, 883 S.E.2d 210, 211 n.1 (2023) (citation omitted). "VINELink," also known as Victim Information and Notification Everyday, "is a free, confidential service that provides crime victims/witnesses, their family members, and victim advocates confidential notification of changes in custody status." https://vinelink.dhs.gov (last visited July 27, 2026).

court appearance related to Defendant's probation violation. After the State rested its case, Defendant testified in his own defense. Defendant testified that after he was convicted in 2016, he was extradited to Florida and that same year came back to North Carolina to "report." Defendant recounted being informed by the probation office that they were unable to supervise him because his pending appeal stayed the underlying judgment. In response, Defendant "went back home" and then ended "up going into a treatment program down in Florida." Defendant testified to having spent thirty days in inpatient treatment and then six months in a halfway house. After roughly six months in the halfway house, Defendant relapsed and returned to inpatient treatment. During this time, Defendant testified to not having any knowledge about his pending appeal. On cross-examination, Defendant recounted his phone number had changed while he was in Florida and that he had last resided at his North Carolina address in 2019. Additionally, while on cross-examination, Defendant stated he "never knew" his original conviction was upheld by the North Carolina Supreme Court and did not follow up with his probation. On redirect, Defendant testified that upon receiving notice of this Court's case reversing his conviction, he believed his case was "done away with" but acknowledged subsequently being told to report to probation.

On 1 April 2025, at the conclusion of Defendant's probation hearing, the trial court revoked his probation and activated his sentence. Defendant entered timely oral and written notice of appeal.

## II.  Analysis

The sole issue on appeal is whether the trial court "erred and abused its discretion by concluding that [Defendant] absconded supervision."  Specifically, Defendant argues the State failed to adduce sufficient evidence of willfulness.  For the reasons below, we affirm.

"[I]n a probation revocation, the standard is that the evidence be such as to reasonably satisfy the [trial court] in the exercise of [its] sound discretion that the defendant has willfully violated a valid condition [upon which probation can be revoked]." *State v. Newsome*, 264 N.C. App. 659, 661, 828 S.E.2d 495, 498 (2019) (brackets in original) (quoting *State v. Harris*, 361 N.C. 400, 404, 646 S.E.2d 526, 529 (2007)).  "The trial court's decision to revoke a defendant's term of probation pursuant to a valid probation violation report is reviewed for abuse of discretion on appeal." *State v. Crompton*, 380 N.C. 220, 224, 868 S.E.2d 48, 51 (2022) (citing *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356 (2014)).  An abuse of discretion occurs when "a ruling 'is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Maness,* 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (citation omitted).

The " 'probation revocation proceeding is not a formal criminal prosecution' and an 'alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt.' " *Newsome*, 264 N.C. App. at 661, 828 S.E.2d at 498 (citation

omitted). "Rather, the State is merely required to produce sufficient evidence to satisfy the trial court in the exercise of its sound discretion." *Crompton*, 270 N.C. App. at 444, 842 S.E.2d at 111 (citation omitted). "When the State presents 'competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms.' " *State v. Melton*, 258 N.C. App. 134, 136, 811 S.E.2d 678, 680 (2018) (citation omitted). Indeed, a trial court "may only revoke probation for a violation of a condition of probation" including committing a "criminal offense in any jurisdiction" or absconding "by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, if the defendant is placed on supervised probation." N.C. Gen. Stat. §§ 15A-1344(a); 15A-1343(b)(1), (b)(3a) (2025). Notably, "[i]t is a defendant's responsibility to keep his probation officer apprised of his whereabouts." *State v. Mills*, 270 N.C. App. 130, 133, 840 S.E.2d 293, 295 (2020) (citation omitted). However,

> merely failing to report for an office visit,
>
> does not, *without more*, violate N.C. Gen. Stat. § 15A-1343(b)(3a) when these exact actions violate the explicit language of a wholly separate regular condition of probation which does not allow for revocation and activation of a suspended sentence. . . .
>
> To hold otherwise would render portions of N.C. Gen. Stat. § 15A-1344(a) superfluous. Allowing actions which explicitly violate a regular or special condition of probation other than those found in N.C. Gen. Stat. § 15A-1343(b)(1) or N.C. Gen. Stat. § 15A-1343(b)(3a) to also serve, *without*

> *the State showing more*, as a violation of N.C. Gen. Stat. § 15A-1343(b)(1) or N.C. Gen. Stat. § 15A-1343(b)(3a) would result in revocation of probation without following the mechanism the General Assembly expressly provided in N.C. Gen. Stat. § 15A-1344(d2).

*Newsome,* 264 N.C. App. at 662, 828 S.E.2d at 498 (cleaned up). "Additionally, we note that establishing a defendant's willful intent 'is seldom provable by direct evidence and must usually be shown through circumstantial evidence.' " *State v. Crompton,* 270 N.C. App. 439, 443, 842 S.E.2d 106, 110 (2020) (quoting *State v. Walston,* 140 N.C. App. 327, 332, 536 S.E.2d 630, 633 (2000)). "In determining the presence or absence of the element of intent, the fact finder may consider the acts and conduct of the defendant and general circumstances existing at the time of the charged probation violation." *Id.*

Defendant's arguments center around whether the State adduced sufficient evidence he willfully absconded under the North Carolina Justice Reinvestment Act of 2011 ("JRA"). Defendant contends that since he did not *know* the North Carolina Supreme Court reinstated his original sentence, he "didn't know [Officer] Johnson was looking for him two years after his conviction and his last known contact with probation."

Notwithstanding arguments to the contrary, the State met its evidentiary burden when it introduced evidence from Defendant's probation officer and the verified probation violation report. *See State v. Gamble,* 50 N.C. App. 658, 661, 274 S.E.2d 874, 876 (1981) ("introduction of the sworn probation violation report

constituted competent evidence sufficient to support the order revoking probation.").

The verified probation violation report provided:[2]

> Of the conditions imposed in that judgment, [Defendant] has willfully violated:
>
> 1. Regular Condition of Probation: General Statute 15A-1343 (b) (3a) "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that, THE DEFENDANT HAS MADE HIMSELF UNAVAILABLE FOR SUPERVISION. OFFICER HAS ATTEMPTED TO LOCATE THE DEFENDANT AT HIS LAST REPORTED ADDRESS OF **[REDACTED]** ROSSMORE RD CLEMMONS, NC ON 08/08/18 @ 5:53PM AND ON 08/29/18 @ 10:49AM WITH A CONTACT NOTICED BEING LEFT ON THE FIRST ATTEMPT LISTING REPORTING INSTRUCTIONS ADVISING DEFENDANT TO REPORT BY 08/10/18 @4:00PM. PHONE CONTACT WAS MADE ON 08/28/18 @ 11:22 NOTIFYING DEFENDANT THAT HE WAS ON SUPERVISED PROBATION. LOCAL HOSPITALS WERE CONTACTED ON 09/11/18 @ 2:06PM AND MET WITH NEGATIVE RESULTS. LOCAL AREA SHELTERS WERE CONTACTED ON 09/05/18 @ 8:21PM AND 8:28PM BOTH MET WITH NEGATIVE RESULTS. STATEWIDE JAIL CHECKS WERE PERFORMED ON 09/13/18 @ 1:00PM THROUGH FCDC INMATE LIST, CJLEADS AND VINELINK ALL BEING MET WITH NEGATIVE RESULTS. ADDITIONALLY, OFFICER SPOKE WITH THE CURRENT RESIDENT AT **[REDACTED]** ROSSMORE RD WHO ADVISES THAT SHE AND HER HUSBAND HAVE LIVED AT THAT ADDRESS FOR MONTHS AND KNOW NOTHING OF AN AHMAD NICOLSON. BASED ON THE FACTS REPORTED ABOVE, OFFICER HAS REASON TO BELIEVE THAT

---

[2] Pursuant to N.C. R. App. P. 42(e), in the above-excerpted quotation, we omit the specific address since it was occupied by others who are not involved in the present appeal. In doing so, we note that the reported address was indeed Defendant's. The redactions are indicated by **[REDACTED]**.

THE DEFENDANT HAS WILLFULLY ABSCONDED SUPERVISION BY MAKING HIS WHEREABOUTS UNKNOWN.

The same underlying facts were testified to by Officer Johnson during the hearing showing reasonable compliance with his duties under N.C. Gen. Stat. § 15-205 (2025). *See, e.g., Crompton*, 270 N.C. App. at 443, 842 S.E.2d at 110 ("Where a probation violation report specifically alleges that a defendant has absconded and the State brings forth competent evidence establishing the violation, then the State has met the burden required of Section 15A-1344(a) to warrant revocation of a defendant's probation."); *but see, e.g.*, *Melton*, 258 N.C. App. at 140, 811 S.E.2d at 683 (holding the State failed to meet its burden, when among other things the testifying probation officer failed to provide "with any specificity and did not have records regarding her attempts to locate defendant").

Since the State met its burden under subsection 15A-1344(a), Defendant bore the burden to establish that his absconding from probation after our Supreme Court upheld his conviction was not willful. *See Crompton*, 270 N.C. App. at 443–44, 842 S.E.2d at 110 ("Once the State has met its burden, the task falls upon the defendant to demonstrate his inability to comply with the terms of his probation. Phrased differently, the task falls upon the defendant to demonstrate that his noncompliance was not 'willful.' ").

In attempting to do so, Defendant testified he relied on family members to update contact information for him and was unaware of our Supreme Court's

decision, and therefore never knew of his obligation to report to probation.   A

probationer's reliance on a third party to fulfill his duties under supervised probation

is not an excuse.   *See, e.g.*, N.C. Gen. Stat. § 15A-1343 ("Regular conditions of

probation apply to each defendant placed on supervised probation. . . ."); *see also e.g.*,

*id*. § 15A-1343(b)(3) (emphasis added) ("As regular conditions of probation, *a*

*defendant must*: (3) Report as directed by the court or his probation officer to the

officer at reasonable times and places . . . and notify the officer of, any change in

address or employment.").

Defendant's testimony further clarifies he was informed his probation could be

reactivated:

> [Defense counsel]: Did you have any reason, other than the
> original check-in at probation, to believe that you weren't
> on probation?
>
> [Defendant]: No.
>
> [Defense counsel]: Did they tell you, maybe, when you went
> to the first -- when you first went to probation, what exactly
> did they tell you?
>
> [Defendant]: Okay. They -- they just told me being that it's
> under appeal, that I won the appeal, until we get further
> notice, then you're not under probation anymore. So --
>
> [Defense counsel]: Based on that, what was your
> expectation or understanding of next steps?
>
> [Defendant]: My -- my expectation was that I would be
> notified.

Defendant testified to having moved to Florida during the pendency of his appeal and

to having changed his phone number. After cross-examination of Defendant, the trial court inquired:

> The Court: I have a question, sir. Since your phone number changed, why didn't you contact probation knowing that they had no means of contacting you since your phone changed?
>
> [Defendant]: Because my mother told them who is my emergency contact. That stayed the same.
>
> . . . .
>
> The Court: Okay. So, it has changed, which means probation had no way of getting in contact with you if your actual phone number changed; right?
>
> [Defendant]: Yes, ma'am.

In fact, Defendant's testimony at the hearing tends to show he "reported in" to probation once while his appeal was pending with this Court and he was told to not return; he willfully failed to make his whereabouts known by not updating or attempting to update the probation office when he moved; he changed his phone number and address without updating his probation officer; he relied on a family member to update the probation office for him; and had knowledge that his original conviction was appealed. Considering the evidentiary record, the trial court could make a reasonable inference from the circumstances that Defendant willfully absconded probation. *See State v. Young*, 148 N.C. App. 462, 466, 559 S.E.2d 814, 818 (2002) (citation modified) ("Willfulness is a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular

case."); *see also Crompton*, 270 N.C. App. at 448, 842 S.E.2d at 113 (citations omitted) ("Thus, the evidence was sufficient to reasonably satisfy the trial court, in the exercise of its sound discretion, that Defendant violated Section 15A-1343(b)(3a), a condition upon which probation can be revoked.").

In this case, sufficient evidence existed to reasonably satisfy the trial court, in the exercise of its sound discretion, that Defendant violated subsection 15A-1343(b)(3a). The trial court therefore properly revoked Defendant's probation.

### III. Conclusion

For the foregoing reasons, the trial court did not abuse its discretion when it found Defendant to have willfully absconded probation and activated his original sentence.

AFFIRMED.

Judges Zachary and Flood concur.

Report per Rule 30(e).